**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James B. LANDSAW, Defendant–**
**Appellant.**

**No. 05–3152.**

United States Court of Appeals,
Tenth Circuit.

Nov. 24, 2006.

James A. Brown, Asst. U.S. Attorney, Office of U.S. Attorney, Topeka, KS, for Plaintiff–Appellee.

Raymond P. Moore, Fed. Public Defender, Howard A. Pincus, Office of the Federal Public Defender District of Colorado and Wyoming, Denver, CO, for Defendant–Appellant.

Before KELLY, ANDERSON, and BEAM,* Circuit Judges.

## ORDER AND JUDGMENT**

C. ARLEN BEAM, Circuit Judge.

James B. Landsaw appeals from the district court's [1] denial of his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and affirm.

## I. FACTUAL BACKGROUND

During a controlled buy in April 2002, Landsaw purchased twelve boxes of pseudoephedrine pills from a confidential informant (CI). Landsaw told the CI that he "broke down" the pseudoephedrine using "Heet" antifreeze, and that he planned on manufacturing methamphetamine by the following weekend. After the transaction with the CI, police arrested Landsaw. He was charged in a two-count indictment with possession of the necessary chemicals to make methamphetamine and conspiracy to make and distribute methamphetamine.

Landsaw's counsel and the government negotiated a plea agreement whereby Landsaw would plead guilty to Count I—

---

* The Honorable C. Arlen Beam, United States Circuit Judge, Eighth Circuit Court of Appeals, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. The Honorable Richard D. Rogers, United States District Judge for the District of Kansas.

possessing precursor chemicals. As part of that agreement, both sides apparently anticipated that Landsaw would receive a two-level safety valve reduction at sentencing.

After Landsaw entered a plea of guilty, the probation officer who prepared the presentence investigation report (PSIR) discovered that Landsaw was not eligible for safety valve relief under Count I. *See United States v. Saffo*, 227 F.3d 1260, 1273 (10th Cir.2000) (holding that a defendant pleading to possession of precursor chemicals is ineligible for safety valve relief, due to the operation of U.S.S.G. § 2D1.1). He would have been safety valve eligible had he entered a plea to Count II and the government stipulated at argument that it would almost certainly have agreed to such an approach.

The probation officer calculated Landsaw's sentencing range, without the safety valve reduction, to be 108 to 135 months. At sentencing, defense counsel conceded that a safety valve reduction would not be available, but asked the district court to depart downward two levels, on no articulable basis, so that Landsaw could receive the sentence agreed upon in the plea bargain—87 months.

The government acknowledged at sentencing that the parties all believed that safety valve relief would be available under the agreement. The government further admitted that it probably would not oppose a downward departure if defense counsel made a proper motion and could state an acceptable guideline-based reason. However, the district court and both parties agreed that no such basis, factual or otherwise, existed. The district court also concluded that the PSIR's calculation was correct and that Landsaw's guideline range was 108 to 135 months. The court sentenced him to 108-months' imprisonment.

In his direct appeal, Landsaw challenged only the district court's decision to deny his motion to suppress evidence. His conviction was affirmed by this court in an unpublished decision. *United States v. Landsaw*, 94 Fed.Appx. 714 (10th Cir. 2004). Landsaw then filed this section 2255 motion, claiming in relevant part that his plea was involuntary because his attorney erroneously promised that he would be afforded safety valve relief and receive an 87–month sentence.

The district court denied the section 2255 filing and determined that Landsaw was not "promised" safety valve relief. Instead, the court noted that the plea agreement and the sentencing colloquy made it clear that a sentence different than the one calculated by his defense attorney could be imposed. The district court also denied Landsaw's request for a certificate of appealability, but a panel of this circuit granted a certificate on the issue of whether ineffective assistance of counsel concerning the safety valve issue rendered his guilty plea involuntary.

## II. DISCUSSION

To establish ineffective assistance of counsel, Landsaw must show that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 691–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice in the guilty plea context, Landsaw must establish that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

A plea may be involuntary due to counsel's errors where the attorney materially misrepresents the consequences of the guilty plea. *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 2318, 164

L.Ed.2d 841 (2006). But an attorney's "erroneous sentence estimate does not render a plea involuntary." *Id.* *See also United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel.")

In *Silva,* the defendant was sentenced as a career offender as a result of his extensive criminal history, but counsel had told him that his criminal history would not be used against him at sentencing. Silva claimed in his section 2255 motion that his plea was not knowing and voluntary because it was the product of this erroneous sentencing advice. We affirmed the district court's denial of his section 2255 ineffective assistance claim when we refused to grant a certificate of appealability on the issue. *Silva,* 430 F.3d at 1100. The plea agreement in *Silva* specifically spelled out that no one could predict with certainty what Silva's guideline range would be until after a presentence investigation had been completed. We held that the plea was not involuntary because of counsel's erroneous advice since the plea agreement adequately informed Silva of the possible adverse sentencing consequences of pleading guilty. *Id.* at 1099.

In *Gordon,* the defendant sought to withdraw his guilty plea on direct appeal, arguing that trial counsel was ineffective for, among other things, not informing him that relevant conduct would be considered in his sentencing calculation. We held that counsel's performance was not constitutionally deficient and that, in any event, the defendant could not establish prejudice because the district court had explained that he might receive a higher sentence and that relevant conduct would be taken into account. *Gordon,* 4 F.3d at 1571.

■ Based on *Silva* and *Gordon,* Landsaw's involuntary plea claim must fail. Though everyone agrees that Landsaw's trial counsel was wrong in her safety valve advice, *Silva* and *Gordon* explicitly hold that erroneous sentencing advice does not render counsel's performance constitutionally deficient.[2] Furthermore, we noted in *Silva* and *Gordon* that despite the erroneous advice by counsel, both the plea agreement and the court colloquy adequately informed the defendants that their sentences might be different than what they expected. *Silva,* 430 F.3d at 1099; *Gordon,* 4 F.3d at 1571. Like the defendants in *Silva* and *Gordon,* Landsaw was repeatedly told that the court could reject the sentencing recommendation in the plea agreement. Accordingly, there was no prejudice.

■ Moreover, Landsaw has an even more difficult road to travel in attempting to show prejudice in this case. That is because safety valve consideration is just that—consideration. Even if Landsaw had been given the opportunity to proffer information to the government for safety valve analysis, it is possible that he would

---

**2.** The dissent contends that trial counsel's representation fell below an objective standard of reasonableness, citing *Miller v. Champion* for the proposition that failure to inform a client of relevant law, here that Landsaw's plea did not support a safety value reduction, violated the performance prong of *Strickland v. Washington. Miller,* of course, did not deal with arcane sentencing guideline issues but rather the well established elements of the charged offense. As previously noted, more apposite precedent is found in *Gordon.* In *Gordon,* trial counsel informed defendant that relevant conduct adjustments would not be used to enhance defendant's sentence even though sentencing law clearly permitted, and perhaps required, such adjustments if requested. 4 F.3d at 1569. In spite of this affirmative misstatement of law, we found that this was not constitutionally deficient performance by counsel. *Id.* at 1570.

not have been awarded safety valve relief under 18 U.S.C. § 3553(f). The government and the sentencing court may not have believed that he had provided a full and truthful account of his knowledge concerning the offense. *See, e.g., United States v. Stephenson*, 452 F.3d 1173, 1180–81 (10th Cir.2006) (rejecting defendant's argument that his proffer letter was forthcoming enough to garner safety valve relief from the mandatory minimum sentence). At the change of plea hearing, the government specifically stated that it would not oppose a two-level safety valve reduction "provided [Landsaw] [wa]s otherwise eligible for the same." Thus, Landsaw mistakenly asserts that he would have unquestionably received safety valve relief if he had pleaded guilty to Count II instead of Count I.

Finally, Landsaw does not even attempt to argue that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have proceeded to trial. *Hill*, 474 U.S. at 59, 106 S.Ct. 366. Instead, he argues that he can show *Strickland* prejudice by virtue of the fact that he would have pleaded guilty to Count II in hopes of receiving a lower sentence, absent counsel's ineffectiveness. Leaving aside the issue of whether Landsaw can establish prejudice in the guilty-plea context absent making the "would-have-proceeded-to-trial" showing required by *Hill*,[3] our earlier analysis demonstrates that Landsaw cannot establish *Strickland* prejudice in this situation.

### III. CONCLUSION

Because Landsaw cannot establish either the performance or prejudice prong of his ineffective assistance of counsel claim, the judgment of the district court is AFFIRMED.

ANDERSON, Circuit Judge, dissenting:

It is the ultimate irony if the justice system cannot figure out how to fix a legal mistake it made resulting in a conceded injustice: a sentence twenty-one months too long.

Broadly speaking, every major player in this case—defense counsel, government counsel, and the district court—has acknowledged that the 108–month sentence imposed in this case was imposed in error. They all agree in one way or the other—but unmistakably—that the proper sentence here was eighty-seven months. Both defense and government counsel freely admit that they acted under a mutual mistake of law when they had Landsaw plead guilty to Count I instead of Count II of the indictment. This mutual mistake of law, as explained in the majority opinion, made it impossible for the district court to apply the safety valve sentencing reduction. In short, the judicial system admits that Landsaw is erroneously and unjustly serving a sentence almost two years longer than he should.

The majority, adhering to a rather sterile application of the law, refuses to rectify this obvious injustice. Because I believe we have the authority, indeed the moral obligation, to rectify such injustice, I respectfully dissent.

The majority concludes that Landsaw can show neither deficient performance by his counsel nor prejudice from counsel's erroneous advice about the availability of a safety valve sentencing reduction. I disagree. While it is true that we have held that erroneous sentencing advice by defense counsel does not render counsel's performance constitutionally deficient, what happened here was more than mere

---

**3.** The dissent would apparently have us rewrite the seemingly straightforward "would have proceeded to trial" language in *Hill v.*

*Lockhart.* We are reluctant to embark on such a course under the circumstances of this case.

erroneous sentencing advice by defense counsel. It was a *mutual* mistake of law, by *both* government and defense counsel, which left the district court absolutely unable, as a matter of law, to grant a benefit which Landsaw and the government envisioned he would receive. " 'The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis ..., as such an omission cannot be said to fall within the wide range of professionally competent assistance demanded by the Sixth Amendment.' " *Miller v. Champion,* 161 F.3d 1249, 1255 (10th Cir.1998) (quoting *Hill v. Lockhart,* 474 U.S. 52, 62, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (White, J., concurring)). I would declare it constitutionally deficient performance for defense counsel to fail to inform Landsaw that a Tenth Circuit case, *United States v. Saffo,* 227 F.3d 1260, 1273 (10th Cir.2000), made a safety valve reduction impossible as a matter of law if Landsaw pled guilty to Count I.

Furthermore, I would find that Landsaw also demonstrated prejudice from that deficient performance. Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant complaining of ineffective assistance of counsel demonstrates prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. That same prejudice requirement applies "to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Thus, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59, 106 S.Ct. 366. Typically, in the plea context, that will involve a demonstration "that there is a reasonable probability that, but for counsel's errors, [the defen-

dant] would not have pleaded guilty and *would have insisted on going to trial." Id.* (emphasis added). It is this latter verbiage that the majority rigidly applies, without further analysis, because there is no proof that Landsaw would have insisted on going to trial.

However, I do not believe that the Court in *Hill* intended the would-have-gone-to-trial test to be the only way a defendant can show prejudice in the plea process context. Rather, the test must be context-specific and it must focus on the ultimate test for prejudice set out in *Strickland* and *Hill*—whether counsel's deficient performance "affected the outcome of the plea process." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. *See United States v. Howard,* 381 F.3d 873, 882 (9th Cir.2004) ("To satisfy *Strickland's* prejudice prong, Howard must allege that but for counsel's error, he would either have gone to trial or received a better plea bargain.")

In this case, there is a reasonable probability that counsel's error, made in concert with and compounded as it was by the concurrence of government counsel, thereby denying the district court its usual sentencing discretion, affected the outcome of the plea and sentencing process. Indeed, government counsel freely conceded at oral argument of this appeal that he would not have objected to letting Landsaw plead guilty to Count II, which permitted application of the safety valve. He also reiterated that, as stated in the plea agreement with respect to Count I, the government would not have opposed application of the safety valve reduction, if Landsaw was otherwise eligible for the reduction. And while it is true that there was no guarantee that Landsaw would ultimately have been deemed eligible for the reduction, there is no doubt that the clear expectation, indeed virtual assumption, of everyone involved was that Landsaw would re-

ceive the safety valve reduction. It cannot be overemphasized that at oral argument government counsel candidly (and commendably) confessed government error in the structuring of Landsaw's plea. He also stated that the government had no objection to the eighty-seven-month sentence the district court wanted to impose.

As to this last point, it also cannot be overemphasized that the district court itself conceded that it would have sentenced Landsaw to eighty-seven months had the mutual error of law by both counsel not occurred. In its Memorandum and Order below, the court stated as follows: "The court would have been willing to sentence defendant to 87 months if that had been the bottom of the guideline range.... If defendant had pleaded guilty to Count Two, instead of Count One, he probably would have received a sentence of 87 months because the safety valve provisions apply to that offense." Memorandum & Order at 1–2, R. Vol. 1, tab. 90, 2005 WL 946518. Surely that demonstrates a reasonable probability that the outcome of the plea process would have been different had counsel not misunderstood the law.

Accordingly, in order to prevent what I perceive to be a fundamental miscarriage of justice, I would vacate the sentence and remand this case to the district court, with directions to vacate the plea agreement and allow the government and defense counsel a chance to readdress a plea agreement. Based on the government's concessions, we assume that an agreement would be reached to allow Landsaw to plead guilty to Count II rather than Count I, thereby permitting the district court to apply the safety valve reduction. I am confident that government counsel will abide by the express statements he made in open court during appellate argument. I am likewise confident that the district court will do what it clearly wanted to do—

i.e., sentence Landsaw to eighty-seven months' imprisonment.

This sentence should be vacated, the underlying plea agreement set aside, and the case should be remanded for further proceedings.