FILED
United States Court of Appeals
Tenth Circuit

June 26, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL DWIGHT NORWOOD,

Defendant - Appellant.

No. 11-6327

(W.D. Oklahoma)

(D.C. Nos. 5:09-CV-01063-F and
5:06-CR-00180-F-1)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

Defendant Michael Norwood filed a pro se motion for relief under

28 U.S.C. § 2255 in the United States District Court for the Western District of

Oklahoma, claiming ineffective assistance of counsel. The district court denied

the motion and declined to grant a certificate of appealability (COA). *See*

28 U.S.C. § 2253(c)(1)(B) (requiring a COA to appeal the denial of a § 2255

motion). Continuing to proceed pro se, Defendant now seeks a COA from this

court on the following claims: (1) that his plea was unknowing and involuntary

because his attorney miscalculated his possible sentence; (2) that his attorney

threatened him to induce him not to pursue his motion to withdraw his plea; (3)

that his attorney was ineffective at sentencing in failing to argue that officers had

engaged in unnecessary controlled buys just to increase his sentence, that

uncharged drug transactions were improperly attributed to him in computing the drug quantity determining his offense level, and that he was not eligible for a leadership-role enhancement; and (4) that his appellate attorney was ineffective in failing to raise the drug-quantity and leadership-enhancement arguments, and arguments that the district court used the wrong standard of proof in finding sentencing facts and that his sentence was substantively unreasonable. We deny the application for a COA and dismiss the appeal.

## I.     BACKGROUND

On August 2, 2006, Defendant was indicted on three counts of distributing methamphetamine, *see* 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1). The drug charges were for methamphetamine sales of 7.1 grams on January 26, 2006; 15.2 grams on March 6, 2006; and 53.7 grams on May 26, 2006. Two months after the indictment, the government filed notice under 21 U.S.C. § 851(a)(1) that Defendant had a prior state drug conviction and therefore faced up to 30 years' imprisonment on counts one and two and life imprisonment on count three. Without reaching a plea agreement with the prosecution, Defendant then pleaded guilty to all the counts in the indictment. In executing a standard form petition to enter a plea of guilty, Defendant marked the Yes answers to the following questions on the form:

[1.]  Do you realize if you plead GUILTY the maximum statutory sentence the judge may impose remains the same as if you had pled NOT GUILTY and had been convicted by a jury? . . . .
[2.]  Do you know the sentence you will receive is solely a matter for the judge to decide? . . . .
. . . .
[3.]  In calculating the range of sentence under the advisory Sentencing Guidelines, the judge will take into account all conduct, circumstances, and injuries associated with your criminal conduct, whether or not this conduct is formally charged by the government. The judge will consider all relevant conduct at the time of sentencing even though you are pleading guilty to fewer than all counts in the Indictment or Information.  Do you understand this? . . . .
[4.]  Also, there is no limitation placed on the information the judge can consider at the time of sentencing concerning your background, character and conduct so long as the information is reliable.  The judge will take all of these factors into consideration in determining an appropriate sentence.  Do you understand this?

Pet. to Enter Plea of Guilty at *4, 6, *United States v. Norwood*, No. 5:06-cr-00180 (W.D. Okla. Oct. 12, 2006), ECF No. 42.  He marked the No answer to the question whether "any officer, attorney or agent of any branch of government (federal, state, or local) [has] promised or predicted that you will receive a lighter sentence, or probation, or any other form of leniency if you plead GUILTY," and the Yes answer to the question whether he understood that "no one has any authority to make any such promise or prediction on your sentence because the matter of sentencing is exclusively within the control of the judge and no one else[.]" *Id.* at 9.  Finally, he filled in the maximum sentences for all counts in the indictment; for count three, he wrote that the maximum sentence was "Life." *Id.* at 4.

At the plea hearing his attorney indicated that Defendant was "very up" on the relevant statutory offenses and sentencing guidelines and knew that one of the counts carried a sentence between ten years and life. R., Vol. 1 at 34 (internal quotation marks omitted). During the plea colloquy Defendant said that when he signed the petition to enter a plea of guilty, he reviewed it with his attorney. He also answered Yes to the following questions:

> [1.] Do you understand, sir, that the Court will not be able to determine the advisory guideline range for your case until after the presentence report [PSR] has been completed and you and the government have had an opportunity to challenge the reported facts and the application of the advisory guidelines recommended by the probation officer and that the sentence imposed may be different from any estimate that counsel may have given you? . . . .
> [2.] Do you also understand that . . . the Court does have the authority to depart either within or outside of the framework of the advisory guidelines and to impose a sentence that is more severe or less severe than the sentence called for by the advisory guidelines? . . . .
> [3.] [D]o you understand that as a practical matter you have no way of knowing what the consequences of your plea . . . will be? . . . .
> [4.] Do you understand . . . that as a result of your guilty plea, the facts that may have an effect on the severity of the sentence for your crime will be determined by [the judge] and not by a jury?

*Id.* at 34–35 (original brackets omitted).

The final PSR grouped the three drug offenses and calculated a base offense level of 38 for both the drug offenses and the firearm offense, based on a drug quantity of 360,700.92 kilograms of marijuana equivalent. *See* USSG §§ 2D1.1(c)(1) (base offense level for drug offenses); 2K2.1(c)(1) (setting firearm offense level at level of drug offense under § 2X1.1 if firearm used in connection

with drug offense). The quantity included not only the 76 grams of methamphetamine from the sales in the indictment, which were computed to be a marijuana equivalent of 321 kilograms, but also the various drugs in numerous transactions between 1988 and 2006, which were deemed to be relevant conduct. The PSR called for a two-level enhancement for Defendant's possession of a firearm during the commission of the offense, *see id.* § 2D1.1(b)(1), a four-level enhancement for Defendant's being "an organizer or leader of a criminal activity that involved five or more participants," *id.* § 3B1.1(a), and a two-level deduction for acceptance of responsibility, *see id.* § 3E1.1(a). Thus, it calculated the total offense level as 42. Because Defendant had a criminal-history category of IV, the advisory guideline sentencing range was 360 months to life imprisonment.

Promptly after the filing of the final PSR, Defendant filed a pro se letter in district court requesting a hearing to change his plea of guilty to not guilty. He complained that the government "is trying to give me more time than my offense of conviction carries," and that he "never admitted to anything amounting to give me a 360 [months] to Life sentence," as opposed to "a 10 [years] to Life sentence." *Norwood*, No. 5:06-cr-00180-F (W.D. Okla. Mar. 7, 2007). Two days later he withdrew the request to withdraw his guilty plea.

Defendant then filed a sentencing memorandum objecting to the revised PSR. He challenged the leader and firearm enhancements and argued that he should be held accountable only for the drugs that were charged in the indictment

(321 kilograms of marijuana equivalent), that his sentence should be the mandatory minimum for count three (10 years), and that at sentencing the district court should not consider information provided by witnesses who were promised anything of value. He also filed motions to prohibit a summary witness at the sentencing hearing and to empanel a jury to determine the relevant conduct for which he should be accountable.

At the sentencing hearing the government called as witnesses two law-enforcement officers and eight of Defendant's former associates. The district court found that Defendant was responsible for 74,660.34 kilograms of marijuana-equivalent drugs rather than the far larger PSR estimate, but the reduction did not affect Defendant's total offense level. The court sentenced Defendant to concurrent sentences of 360 months' imprisonment on counts one and two, life imprisonment on count three, and 120 months' imprisonment on count four.

After judgment was entered, the district court granted defense counsel's motion to withdraw and appointed new counsel, who filed a notice of appeal. The appeal raised only one issue: whether the sentencing-hearing testimony on Defendant's prior drug activity was sufficiently reliable. Defendant, citing a conflict with his counsel over which issues to raise on appeal, filed a letter in this court requesting that his appellate counsel be removed, the appeal be suspended, and new appellate counsel be appointed. On December 12, 2007, his counsel also sought leave to withdraw.

On December 26, 2007, we affirmed Defendant's sentence but appointed new counsel and extended the time to file a petition for rehearing. The petition raised three new issues: (1) that Defendant's prior drug transactions were not "relevant conduct" for sentencing purposes, R., Vol. 1 at 37; (2) that his sentence violated the Fifth Amendment because the district court's findings had so dramatically increased his sentence that the court should have had to make the findings under a beyond-a-reasonable-doubt standard rather than a preponderance standard; and (3) that his sentence was substantively unreasonable. A divided panel denied the petition. After unsuccessfully petitioning for a writ of certiorari in the Supreme Court, Defendant filed his § 2255 motion in district court.

## II. DISCUSSION

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.* We recognize that in determining whether to issue a COA, a "full consideration of the factual or legal bases adduced in support of the

claims" is not required. *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003). Instead, the decision must be based on "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* We address in turn the four issues on which Defendant seeks a COA.

### A. Miscalculation of Possible Sentence

Defendant argues that his guilty plea was unknowing and involuntary because his attorney provided ineffective assistance by assuring him "that his sentence could only be based on the offenses of conviction, that his guideline range was 70-87 months, . . . that his sentence would not exceed the mandatory minimum of 10 years," and "that the court could not and would not use uncharged conduct" in determining his sentence. Aplt. Br. at 19.

The district court rejected Defendant's argument, stating that "'[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel.'" R., Vol. 1 at 40 (quoting *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)). The court added that even if counsel's advice had been deficient, Defendant could not establish prejudice because "a defendant [who] enters a guilty plea pursuant to a plea petition and plea colloquy in which he acknowledges the potential maximum sentence and that the sentence would be determined by the judge . . . is not prejudiced by counsel's errors in estimating a potential sentence." R., Vol. 1 at 40 (citing *United States v. Silva*, 430 F.3d 1096,

1100 (10th Cir. 2005)).  In our view, no reasonable jurist could debate that Defendant was not prejudiced by any deficient performance of his counsel because the district court clearly informed him properly before accepting his plea.

###  B.  Withdrawal of Guilty Plea

In a related argument, Defendant contends that his guilty plea was not knowing and voluntary because he withdrew his motion to withdraw his guilty plea only after his attorney threatened that otherwise he would no longer represent Defendant and that Defendant would be forced to proceed pro se.  He asserts that it is unacceptable that "'one constitutional right should have to be surrendered in order to assert another,'"  Aplt. Br. at 22–23 (quoting *Simmons v. United States*, 390 U.S. 377, 394 (1968)).

The district court ruled that it did not "need [to] address whether counsel's performance was deficient in allegedly demanding that [D]efendant withdraw his *pro se* motion" because Defendant could not "show prejudice resulting from counsel's alleged action."  R., Vol. 1 at 43.  It said that in any event Defendant could not have shown a fair and just reason for withdrawing his guilty plea, because he never asserted his innocence, he said at the plea hearing that he was fully satisfied with his attorney's performance, and he told the court that "no one had forced him to plead guilty and that he was pleading guilty of his own free will because he was guilty."  *Id.* at 42–43.  The district court's decision that Defendant failed to show prejudice could not be debated by a reasonable jurist.

## C. Sentencing

Defendant argues that he received ineffective assistance of counsel at sentencing in several respects. We hold that the district court's resolution of Defendant's arguments was neither debatable nor wrong. We summarize each argument and the district court's response.

First, Defendant contends that his attorney should have argued that the government manipulated the quantity of methamphetamine attributed to him by choosing to escalate the quantity in the third buy rather than arresting him earlier. The district court concluded that Defendant could not show that he was prejudiced because the unmade argument lacked merit. *See United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) ("When . . . the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue. If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." (citation omitted)). It pointed out that Defendant would have needed to show that the government's investigation was "done in a manner that 'is so shocking, outrageous, and intolerable that it offends the universal sense of justice,'" R., Vol. 1 at 45 (quoting *United States v. Lacey*, 86 F.3d 956, 964 (10th Cir. 1996) (internal quotation marks omitted)), yet circuit precedent is that "'it is not outrageous for the government to induce a defendant to repeat, continue, or even expand

previous criminal activity.'"  R., Vol. 1 at 45 (ellipsis omitted) (quoting *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994)).

Second, Defendant contends that his attorney should have challenged the inclusion of drug quantities from past transactions as "relevant conduct" because they were not part of a "common scheme or plan."  USSG § 1B1.3(a)(2).  He argues that his criminal activity did not possess the requisite similarity, regularity, and temporal proximity.  *See United States v. Caldwell*, 585 F.3d 1347, 1350 (10th Cir. 2009).  In rejecting this argument, the district court noted that Defendant's attorney had in fact challenged the inclusion of the past transactions as "relevant conduct," focusing on the lack of temporal proximity.  Moreover, it said that Defendant could not show prejudice because the prior offenses were relevant conduct.  It explained that "the number and frequency of [his] acts shows regularity" and that "[t]he sheer repetitiveness of [his] drug dealing activity, coupled with the similarity of his drug offenses over a lengthy period of time, reduces the impact, for analytical purposes, of any temporal gaps."  R., Vol. 1 at 49.

Third, Defendant argues that his attorney did not adequately challenge the leadership-role enhancement, making only "a half-hearted objection to the proposed enhancement" that "failed to articulate a valid reason for his objection." Aplt. Br. at 36.  The district court rejected this argument because Defendant's attorney objected to the enhancement, and "the evidence established with clarity

that defendant organized, managed and directed more than five participants in other relevant criminal activity." R., Vol. 1 at 50.

Finally, Defendant argues that his attorney was ineffective at sentencing because he devoted much of his sentencing memorandum to one meritless issue—namely, whether the court should refuse to consider testimony from former associates who were given or promised anything of value. The district court rejected this argument because the memorandum was in fact persuasive. It said that "in making its findings at the conclusion of the sentencing proceedings, the court did indeed—as urged by the defendant's trial counsel—reject significant portions of the testimony offered by the government to establish the earlier drug transactions." *Id.* at 51.

## D.    Appellate Counsel

Defendant argues that his appellate counsel was ineffective because he raised one meritless issue (that the testimony of his drug associates lacked sufficient indicia of reliability) and ignored several meritorious issues. The allegedly meritorious omitted issues were (1) that Defendant did not qualify for a leadership enhancement; (2) that his past drug transactions were not "relevant conduct" for sentencing purposes; (3) that the government must prove beyond a reasonable doubt the facts that so greatly increased his sentence; and (4) that his

sentence was substantively unreasonable.[1]  The last three issues were raised in his petition for rehearing, but he argues that his second appellate counsel's "involvement . . . came too late" because his new claims allegedly were not reviewed when this court denied the petition.  Aplt. Br. at 41.

We have already held that the first two potential appellate arguments lack merit, so Defendant was not prejudiced by any failure to raise them.  As for the last two potential arguments, the district court was clearly correct in ruling that they too were meritless and Defendant was therefore not prejudiced by their not being raised.  As the district court said, the standard-of-proof argument is "foreclosed by [Tenth Circuit] case law."  R., Vol. 1 at 52–53 (citing *United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir. 2005); *United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007)).  And the district court also correctly stated that this court would not find the sentence substantively unreasonable because of its deferential standard of review.

---

[1] Defendant raised in district court the claim that his appellate counsel was ineffective for failing to argue that the government had engaged in sentencing-factor manipulation.  But he appears to have abandoned that argument on appeal.

## III. CONCLUSION

We DENY Defendant's application for a COA and DISMISS his appeal.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge