**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**November 22, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER DEAN DANA,

    Defendant - Appellant.

No. 23-5093
(D.C. No. 4:21-CR-00228-JFH-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, **McHUGH**, and **EID**, Circuit Judges.
_____

Christopher Dean Dana pleaded guilty to coercion and enticement of a minor in Indian country, and the district court sentenced him to 360 months in prison. He appeals. In response, the government moves to enforce the appeal waiver in Mr. Dana's plea agreement. *See United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004). We grant the government's motion and dismiss this appeal.

### *Background*

The parties entered into the plea agreement the morning of trial. The agreement required Mr. Dana to plead guilty to coercion and enticement of a minor in

---

   * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Indian country, an offense requiring a prison sentence between ten years and life. *See* 18 U.S.C. § 2422(b). The agreement also required him to waive "the right to directly appeal the conviction and sentence" unless his sentence exceeded the statutory maximum. R. vol. 1 at 65. After the district court performed what even Mr. Dana describes as "a comprehensive colloquy," Resp. at 10, Mr. Dana pleaded guilty.

Before sentencing, Mr. Dana's counsel moved to withdraw. The presentence investigation report had concluded that the federal sentencing guidelines called for a life sentence, a conclusion that apparently surprised plea counsel. Counsel had miscalculated the guidelines range, and his miscalculation led him to advise Mr. Dana that his sentence would likely fall in the range of ten to fifteen years. In addition, counsel said, Mr. Dana pleaded "guilty under the belief that by doing so he was removing the possibility of a life sentence." R. vol. 2 at 16.[1] The court granted plea counsel's motion to withdraw and appointed a new lawyer to represent Mr. Dana going forward.

Mr. Dana appeared with his new lawyer at sentencing. Mr. Dana urged the district court to impose 120 months, the government 360 months. The district court imposed 360 months.

---

[1] Plea counsel's motion to withdraw and the transcript of the hearing on that motion were filed (and will remain) under seal. To provide a coherent and thorough decision, however, we must discuss or quote some information in the sealed record. We have discussed or quoted only those parts of the sealed record that are necessary to fully explain our decision.

*Discussion*

We will enforce an appeal waiver if (1) the appeal falls within the waiver's scope, (2) the defendant knowingly and voluntarily waived the right to appeal, and (3) enforcing the waiver would not "result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325. Mr. Dana does not dispute that his appeal falls within the scope of his waiver, so we need not address that issue. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005). He does, however, contend that his waiver was not knowing and voluntary, and that enforcing it would result in a miscarriage of justice. We are not persuaded.

**1. Mr. Dana fails to show that his waiver was unknowing or involuntary.**

Mr. Dana bears the burden to show that his waiver was unknowing or involuntary. *See United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013).

To assess whether a waiver was knowing and voluntary, we typically focus on two factors: "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily" and whether the district court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. These factors weigh heavily against Mr. Dana. He expressly asserted in his plea agreement that he understood his appellate rights and that he knowingly and voluntarily waived them. He further asserted that he understood the agreement and voluntarily agreed to it. At the plea hearing, Mr. Dana confirmed that he understood the appeal waiver. And after conducting a thorough plea colloquy, the district court found that he entered his plea knowingly and voluntarily.

3

Yet Mr. Dana suggests that the record does not show that he understood his appeal waiver. He underscores two facts. First, his petition to enter a guilty plea did not mention the appeal waiver in the section outlining Mr. Dana's waiver of *constitutional* rights. But that omission is not surprising, for "it is well settled that there is no constitutional right to an appeal." *Abney v. United States*, 431 U.S. 651, 656 (1977). Second, when he wrote out his understanding of the plea agreement, he did not mention the appeal waiver. But he did not mention his waiver of any other rights either, so we do not infer from his written statement that he did not know about the appeal waiver. Besides, any doubt about whether Mr. Dana understood his appeal waiver disappears once we look at the plea agreement and the transcript of the plea hearing.

Mr. Dana also challenges the validity of his plea itself. He argues that his lack of experience with the criminal-justice system and his plea counsel's failure to understand the sentencing guidelines prevented him from entering a valid plea. If he did not enter the plea agreement knowingly, then "the appellate waiver subsumed in the agreement also cannot stand." *United States v. Rollings*, 751 F.3d 1183, 1189 (10th Cir. 2014).

Counsel's advice that Mr. Dana's sentence would likely fall in the range of ten to fifteen years does not undermine the validity of his plea. That remains true even if the advice resulted from counsel's ignorance about the sentencing guidelines. The plea agreement advised Mr. Dana that "any estimate of the likely sentence received from any source is a prediction, not a promise." R. vol. 1 at 75. At the plea hearing,

moreover, he claimed to understand that the "sentence imposed may be different from any estimate" from his counsel. *Id.* at 91. In any event, an "erroneous sentence estimate" by itself will "not render a plea involuntary." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005).

More troubling is plea counsel's allegation that Mr. Dana pleaded "guilty under the belief that by doing so he was removing the possibility of a life sentence." R. vol. 2 at 16. Such a belief would have been plainly incorrect. The record, however, contains ample evidence that Mr. Dana knew he faced a possible life sentence when he pleaded guilty. In his petition to enter a guilty plea, he asserted that his attorney informed him that he could receive the maximum possible punishment—life in prison. He also acknowledged that the possible "range of punishment" under the plea agreement was ten years to life. R. vol. 1 at 59. The plea agreement itself explicitly said that "the maximum statutory sentence is life imprisonment." *Id.* at 74. And when answering the judge's questions under oath at the plea hearing, Mr. Dana claimed to understand that his sentence "may include a term of imprisonment between ten years up to life." *Id.* at 88. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). And in the end, plea counsel's statement that Mr. Dana believed his plea removed the possibility of a life sentence does not overcome the numerous statements in the record showing that Mr. Dana knew a life sentence was possible.

On this record, Mr. Dana has failed to show that his waiver was unknowing or involuntary.

5

**2. Enforcing the waiver will not result in a miscarriage of justice.**

Enforcing an appeal waiver will result in a miscarriage of justice if (1) the district court relied on an impermissible sentencing factor; (2) ineffective assistance of counsel in negotiating the waiver makes it invalid; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful, seriously affecting the fairness, integrity, or public reputation of the proceedings. *See Hahn*, 359 F.3d at 1327. Mr. Dana has the burden to show that enforcing his appeal waiver will result in a miscarriage of justice. *See United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

Mr. Dana contends that enforcing his waiver will result in a miscarriage of justice for two reasons. First, he says that "his plea resulted from improper, inadequate, and insufficient advice." Resp. at 14. We understand him to argue that he received ineffective assistance. But "a defendant must generally raise claims of ineffective assistance of counsel in a collateral proceeding, not on direct review. This rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." *Porter*, 405 F.3d at 1144 (citation omitted). We see no reason here to depart from our general practice of requiring defendants to raise ineffective-assistance claims in collateral proceedings. Second, Mr. Dana argues that his sentence is substantively unreasonable. We take this argument to allege that his waiver is otherwise unlawful. But the argument alleges merely a sentencing error. And to decide if the waiver is unlawful, we ask "not whether the sentence is unlawful, but whether the waiver itself is unlawful because of

some procedural error or because no waiver is possible." *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007).

For these reasons, Mr. Dana has not shown that enforcing his appeal waiver will result in a miscarriage of justice.

### *Disposition*

We grant the government's motion to enforce the appeal waiver.  We dismiss this appeal.

Entered for the Court
Per Curiam